## Commonwealth ex rel. Gervasio, Appellant, *v.* Gervasio.

Argued September 12, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Eli N. Donsky,* with him *Henry I. Einbinder,* and *Donsky & Katz,* for appellant.

*Irving R. Shull,* with him *Alfred I. Ginsburg,* and *Bernard L. Lemisch,* for appellee.

OPINION BY WRIGHT, J., November 14, 1958:

We are here concerned with a controversy between divorced parents involving the custody of their two minor children. After several hearings, the court below, on June 11, 1957, awarded custody to the mother, and granted liberal visitation rights to the father. The father appealed. Following oral argument on March 25, 1958, by agreement of counsel, we remitted the record to the court below "so that additional testimony may be taken in order to bring the record up to date and thereafter to enter an appropriate adjudication". After a further hearing, the court below, on July 3, 1958, reaffirmed its original order. We heard supplemental argument on September 12, 1958, and have reached the unanimous conclusion that the matter was properly decided by the court below.

The parties were married on August 27, 1950, and have two children, a son, Robert, born June 29, 1952, and a daughter, Worna, born June 22, 1954. Robert

is a retarded child, apparently the result of an attack of measles suffered by his mother during pregnancy. In October 1956, while the parties were living in Levittown, Pennsylvania, appellant took the two children to his mother's home in Trenton, New Jersey. The wife promptly demanded custody, whereupon a separation agreement was executed by virtue of which appellant returned the children. It is asserted by appellant that he executed the agreement because the wife promised to take the children to her mother's home in Mississippi. The record indicates that the wife did go to Mississippi with the children but returned after several weeks to the City of Philadelphia. She asserts that she came to Philadelphia because the facilities there for Robert's treatment were superior to those in Mississippi.

Appellant contends that the mother is unfit to have custody (1) because of her neglect of the children, and (2) because of moral lapses in the past. At the original hearings before the court below, appellant produced testimony in support of his contention that the mother had been intimate with Harold Karabell, and that she and Karabell were under indictment for adultery. At the first argument of this appeal, it was disclosed, and subsequently made a matter of record at the further hearing, that the mother had divorced appellant on February 10, 1958, had married Karabell on March 17, 1958, and that the adultery prosecution had resulted in a verdict of not guilty. The mother and her present husband are now living with the children in a pleasant apartment at 806 South 55th Street, Philadelphia. She devotes all of her time to the care of her home and family. A probation officer of the Municipal Court testified that the apartment contains a porch, living room, dining room, two bedrooms, bath and kitchen, that it is nicely furnished and neatly

maintained, and that the children are clean and well cared for. Robert attends the Awbury Tutoring School, an institution for retarded children, where he shows a great deal of improvement. Dr. Leopold, the examining psychiatrist, recommended that Robert remain with his mother and continue his special schooling. Dr. Pittinger, the examining physician, reported that both children were well nourished and in excellent physical condition. Karabell is interested in the children and is willing to help maintain them. He is employed as a musician and earns $6000.00 a year. While he is of the Jewish faith, he is satisfied to have the children reared in his wife's faith. She is a Lutheran and plans to raise the children in that faith.

In child custody cases the paramount consideration is the welfare of the children and all other factors are subordinate: *Commonwealth ex rel. Sabath v. Mendelson*, 187 Pa. Superior Ct. 73, 143 A. 2d 665. Unless compelling reasons appear to the contrary, children of tender years should be committed to the care and custody of the mother by whom their needs are ordinarily best served: *Commonwealth ex rel. Mann v. Mann*, 181 Pa. Superior Ct. 438, 124 A. 2d 432. In his original opinion the hearing judge stated: "None of the testimony offered in support of the contention that the mother neglected the children and failed to properly care for them is convincing . . . We were convinced from the report of Mrs. Cousins that Mrs. Gervasio kept the home and the children clean and in proper order but for complete reassurance decided to make an unannounced call on Mrs. Gervasio and the children. We found both the kitchen and the combination living room and bedroom [where the mother and children were then living] spotlessly clean and the children well cared for. It was obvious that a deep attachment exists between the mother and the children . . .

We believe that it would be a tragedy to take these two children from the custody of the mother". The position of the hearing judge has been fully justified by the subsequent events. So far as the mother's alleged misconduct with Karabell is concerned, not only were the parties acquitted of the charge of adultery, but also their association, as stated by the hearing judge in his supplemental opinion, "was not a trifling relationship, but one which ripened into marriage".

There have been few custody cases before us in which the opportunity has been afforded to evaluate the force and effect of the order of the lower court over such a long trial period. The mother is now happily married and a harmonious family relationship has been established. The children are well cared for and are flourishing in their present environment. Our examination of this voluminous original record, containing over 600 pages, discloses no logical reason to disturb the existing situation.

Order affirmed.