375 A.2d 165

**In re Shawn Christopher HILL, a minor.**

**Appeal of Grant L. HILL and Betty Andrus.**

Superior Court of Pennsylvania.

Submitted Sept. 13, 1976.

Decided June 29, 1977.

416

Gregory V. Smith, Williamsport, for appellants.

Thomas Wood, Williamsport, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

VAN der VOORT, Judge:

Sometime in October 1973, Shawn Christopher Hill, born February 23, 1971, went to live with Betty Andrus [1] who was his paternal aunt. This was a voluntary arrangement between Shawn's mother, Mrs. Wilson,[2] and Mrs. Andrus. However, on April 29, 1974, Winona Gray, a caseworker with the Lycoming County Children's Services (Children's Services) filed a petition in the Court of Common Pleas of Lycoming County alleging that Denise Hill, Shawn's sister, was a child presently in need of care, guidance and control. Prior to the hearing on that petition, Mrs. Gray, was granted

1. At the time of the original placement, Mrs. Andrus was not married and was Miss Betty Hill.

2. Shawn's mother has subsequently married Mr. Wilson, but prior to that she was married to Shawn's father, Mr. Grant Hill.

leave of court to file an oral petition requesting that Shawn Hill be placed in the legal custody of Betty Hill. Pursuant to a "Petition for Restoration of Custody" filed by Mrs. Wilson, a hearing was held on April 29, 1976 and continued to May 14, 1976 at the conclusion of which the court ordered that Shawn Hill be returned to the custody of his mother. From that order, Betty Andrus and Grant Hill appealed to this court.

Appellants initially contend that the lower court erred when it admitted into evidence a report from the Allen County Children's Services of Lima, Ohio which contained an evaluation of the home of the natural mother. The report was in the possession of the Lycoming County Children's Services and had been sent to them by the Allen County Children's Services pursuant to the Interstate Compact on Juveniles.[3] The content of the report was a home study conducted by one of the caseworkers employed by the Allen County Children's Services Board. There were three separate visits by the caseworker to the home of the natural mother and her husband. The first visit was included in the report of January 29, 1976. A letter dated March 23, 1976 was later sent to the Lycoming County Children's Services and contained information regarding two subsequent visits to the natural mother's home. The caseworker from Lycoming County testified that reliance is put on such reports when the agency has to decide where a child under their supervision should be placed. The initial request for the report from Ohio was made in anticipation of the return of Shawn's two brothers, Christopher and Dustin. However, during the hearing concerning the custody of Shawn, counsel for the natural mother attempted to have the report and letter introduced into evidence. Counsel for Mrs. Andrus strongly objected on the basis that the letter and the report were hearsay and as a result he was being denied his right to cross examine.

Although the receipt of such reports is the general practice between children services agencies in different

3. Act of June 13, 1967, P.L. 31, No. 21, Art. 7, 62 P.S. § 731.

states and a great deal of reliance is placed on the information contained in them by the agencies, the introduction of such reports into evidence at a hearing has not been condoned by the appellate courts of Pennsylvania. In *Commonwealth ex rel. Mathis v. Cooper et ux.*, 188 Pa.Super. 113, 146 A.2d 158 (1958), this court was confronted with a very similar situation concerning the admission of another agency's evaluation of a sister's home. The lower court in the *Mathis* case actually stated in its opinion that it was relying on that evaluation in returning the child to the sister. In reversing the order we stated the general principle to be applied in such cases as these:

> Ordinarily reliance by the court on reports of court investigators concerning the condition of the parties' respective homes constitutes reversible error: *Commonwealth v. Rubertucci*, 159 Pa.Super.Ct. 511, 49 A.2d 269 (1946). See also *Commonwealth ex rel. Mark v. Mark*, 115 Pa.Super. 181, 175 A. 289 (1934); *Commonwealth ex rel. Balick v. Balick*, 172 Pa.Super. 196, 92 A.2d 703 (1952).

*Commonwealth ex rel. Mathis v. Cooper*, 188 Pa.Super. 113, 116, 146 A.2d 158, 160 (1958). In the instant case, the lower court did not specifically state that it was relying on the report from Allen County Children's Services. However, after reviewing all of the evidence, excluding the report and letter, we are not able to say that it was obvious that Shawn should have been returned to his natural mother and therefore the admission of the report is harmless error. The witnesses on behalf of the natural mother testified that they had known her anywhere from six months to a year and could speak well of her character. On the other hand, the witnesses presented on behalf of Mrs. Andrus testified that the mother had a history of cavorting around with other men and freely imbibing in alcoholic beverages to the degree of frequently being intoxicated. It is true that the lower court has wide discretion in those cases where the demeanor and credibility of witnesses is important. The appellate courts should not substitute their findings for that of the lower court unless it is apparent from the record that a

manifest error would be allowed to exist if the appellate court did not so act. In *Commonwealth ex rel. Gregory v. Gregory*, 188 Pa.Super. 350, on page 356, 146 A.2d 624, on page 627 (1958) this court stated:

> While it is true that the findings of the hearing judge on questions of fact, particularly where the credibility of witnesses is concerned, are entitled to be carefully considered, this rule does not apply in favor of deductions or inferences which are made by the trial judge from the facts which he has found. The conclusions of the trial judge, being no more than his reasoning from the facts, are always reviewable, either by the court en banc or by an appellate court. (Citations omitted)

The lower court heard testimony on and admitted into evidence the report and letter prepared by another agency. The individuals who prepared the report and letter were not present to be cross-examined and consequently the validity and the reliability of the information contained in these documents could not be established. The necessity for cross-examination is especially important in situations such as the one presented in this case, because the evaluation of a person's home for the purposes of raising children and the valuation of that person as a parent are extremely subjective. Different people might emphasize different physical necessities in a home and different personal characteristics of a potential custodian. Since the natural mother had not lived in Ohio for that long a period of time, the foundation of the recommendation that her children be returned to her is one worthy of inquiry.

We are not able to say with certainty how much weight was afforded the improperly admitted report. However, the record indicates that it was not completely ignored. The following colloquy reflects the lower court's opinion of the value of the report as evidence.

> BY THE COURT: Since a consideration in custody is whether or not it is desirable in a given case to have all children together, what has been done with respect to the siblings has relevance here, in this custody proceeding.

BY MR. SMITH: As I understand it, Your Honor, nothing's been done with respect to the other two. They are still in Lycoming County.

BY THE COURT: There are plans afoot, and that is relevant.

BY MR. SMITH: I would object to plans in the future, and it is a subjective type of thing, and it hasn't happened yet.

BY THE COURT: Objection overruled.

Because the appellants were denied their right to cross-examine the authors of the report and because we are unable to evaluate the report itself since it is not part of the record, we must reverse the order of the lower court and remand the case for a hearing consistent with this Opinion.

Reverse and Remanded.

SPAETH, J., files concurring opinion, in which HOFFMAN, J., joins.

SPAETH, Judge, concurring:

I agree that the case should be remanded, on the understanding that the lower court is to apply the stand articulated in *In re Hernandez,* 249 Pa.Super. ——, 376 A.2d 648 (1977).

HOFFMAN, J., joins in this concurring opinion.