461 A.2d 248

**Valerie HALL, Appellant**

v.

**Clifford N. LUICK.**

Superior Court of Pennsylvania.

Submitted Jan. 11, 1983.

Filed May 27, 1983.

[redacted] 

[redacted]

---

Donald Gary Keyser, Uniontown, for appellant.

Gerald R. Solomon, District Attorney, Uniontown, for Commonwealth, appellee.

Before CERCONE, P.J., and POPOVICH and VAN der VOORT, JJ.

POPOVICH, Judge:

This is a child custody case. The trial court granted custody of the parties' son, now twelve years old, to the father. The mother has appealed. We reverse and remand for the reasons herein stated.

The standard of review which we must apply has been set forth in the following manner:

> "It is settled that the paramount concern in a child custody proceeding is to determine what is in the best interests of the child. *Commonwealth ex rel. Parikh v. Parikh,* 449 Pa. 105, 296 A.2d 625 (1972); *Sipe v. Shaffer,* 263 Pa.Super. 27, 396 A.2d 1359 (1979). In a contest between parents, each party bears the burden of proving that an award to that party would be in the best interests of the child. *In re Custody of Hernandez,* 249 Pa.Super. 274, 376 A.2d 648 (1977). The award must be based on the facts of record and not on mere presumptions; in particular, the tender years presumption is no longer recognized, *Sipe v. Shaffer, supra; McGowan v. McGowan,* 248 Pa.Super. 41, 374 A.2d 1306 (1977).
>
> In order to ensure that the best interests of the child will be served, the appellate court will engage in a comprehensive review of the record. *Scarlett v. Scarlett,*

257 Pa.Super. 468, 390 A.2d 1331 (1978); *In re Custody of Myers,* 242 Pa.Super. 225, 363 A.2d 1242 (1976). Thus, while it will defer to the lower court's findings of fact, the appellate court will not be bound by the deductions or the inferences made by the lower court from those facts, but will make an independent judgment based upon its own careful review of the evidence. *Sipe v. Shaffer, supra; Scarlett v. Scarlett, supra.* In conducting this review, the appellate court will look to whether all the pertinent facts and circumstances of the contesting parties have been fully explored and developed. *See Sipe v. Shaffer, supra; Gunter v. Gunter,* 240 Pa.Super. 382, 361 A.2d 307 (1976). It is the responsibility of the lower court to make a penetrating and comprehensive inquiry, and if necessary, to develop the record itself. *See Commonwealth ex rel. Cox v. Cox,* 255 Pa.Super. 508, 388 A.2d 1082 (1978). After fulfilling this responsibility to ensure a complete record, the court must file a comprehensive opinion containing its findings and conclusions. *See Valentino v. Valentino,* 259 Pa.Super. 395, 393 A.2d 885 (1978); *Gunter v. Gunter, supra.* Only with the benefit of a full record and full opinion can the appellate court hope to fulfill its responsibility of conducting its own careful review. *Valentino v. Valentino, supra.* Where the record is incomplete or the opinion of the lower court is inadequate, the case will be remanded. *See Valentino v. Valentino, supra; Commonwealth ex rel. Forrester v. Forrester,* 258 Pa.Super. 397, 392 A.2d 852 (1978); *Commonwealth ex rel. Cox v. Cox, supra."*

*Parks v. Parks,* 284 Pa.Super. 400, 406–407, 426 A.2d 108, 111 (1981).

With this framework in mind, we must examine the procedural history of the case.[1]

At the outset, appellant filed a "COMPLAINT FOR CONFIRMATION OF CUSTODY" which was granted on Sep-

1. We note that the issue concerning the appropriate standard of review in custody cases has been certified for en banc consideration by this Court. *See In Re: Donna Williams and Edward Williams,* (J. 934/82).

tember 29, 1981. Appellee filed exceptions to this order. A custody hearing was held on November 6, 1981. During this hearing, testimony was presented by appellant, appellant's husband, appellee, and a caseworker from the Fayette County social services agency. The trial court conducted an in camera hearing with Justin, the parties' son. At the close of the hearing, the parties agreed that they could supply the court with a "short memorandum" in place of closing argument. It appears from the record that memoranda were not filed. Then on November 13, 1981, the court ordered "investigations to be made upon the natural mother and the natural father to" be completed on or before December 18, 1981.

Subsequently, the court entered a "MEMORANDUM OPINION AND ORDER" dated February 4, 1982, awarding custody to the natural father, appellee, with visitation rights to the "Petitioner mother" for the reason that the "home environment established by respondent father will best promote the physical, intellectual and spiritual well-being of the child." An appeal was taken. Approximately one month later, the court issued an opinion which included findings of fact. In the interim, on March 18, 1982, the reports of the social service agencies which had investigated the home environment of both parties and the report of Justin's psychological evaluation were filed with the court. No further hearings were held by the court below.

In the past, we have said:

"The right of a litigant to in-court presentation of evidence is essential to due process: 'In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses.' *Goldberg v. Kelly,* 397 U.S. 254, 269, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970) (citing extensive authority." *Wood v. Tucker,* 231 Pa.Super. 461, 463, 332 A.2d 191, 192 (1974). *Accord Palmer v. Tokarek,* 279 Pa.Super. 458, 475, 421 A.2d 289, 298 (1980).

On this subject, we also have recognized the following:

"One requirement of this complete record is that disinterested testimony be heard concerning the fitness of each

parent's home. *Rupp v. Rupp*, 268 Pa.Super. 467, 408 A.2d 883 (1979); *Lewis v. Lewis*, 267 Pa.Super. 235, 406 A.2d 781 (1979)." *Hugo v. Hugo*, 288 Pa.Super. 1, 430 A.2d 1183, 1187 (1981).

■ At this stage of the proceedings, we cannot in good conscience exercise our appellate function because appellant was deprived of an opportunity to confront and cross-examine adverse witnesses and also because the record without the reports contains no disinterested testimony concerning the fitness of appellee's home.[2] See Brief for Appellant at 13.

Initially, we note that the trial court made the "ex parte" investigative reports of the Fayette County Children and Youth Services and the Superior Court of the State of California, County of Orange, Family Conciliation Court Services "a part of the record in this case." *See* "FACTUAL FINDING" No. 20.

Although the trial court did not state in its opinion that it had relied on the reports, there was *no other* "disinterested" testimony concerning the fitness of appellee's home since appellee and Justin gave testimony on this subject. *See J.F.G. v. K.A.G.*, 278 Pa.Super. 25, 419 A.2d 1337 (1980); *Rupp v. Rupp, supra; Lewis v. Lewis, supra; Valentino v. Valentino*, 259 Pa.Super. 395, 393 A.2d 885 (1978); *See also Commonwealth ex rel. Cox v. Cox*, 255 Pa.Super. 508, 509, 388 A.2d 1082, 1083 (1978) ("unquestionably the most interested parties to the proceeding, the children ...."); *Gunter v. Gunter*, 240 Pa.Super. 382, 402, 361 A.2d 307, 318 (1976) (the record was deficient where "[n]o one, such as a social worker for the court, inspected the mother's or father's respective residence and described them to the court.")[3]

**2.** A caseworker who had visited appellant's home in July of 1981 generally described appellant's home.

**3.** For edification purposes, we note the following directive which was issued in a prior case:
"Having recognized the parties' failure to present disinterested testimony evaluating the parties' home, we direct that the lower court

At the custody hearing, the trial court did indicate that it would consider the reports in response to a request made by appellant's attorney in the following portions of the transcript:

"MR. WARMAN [Attorney for Appellant]:

Your Honor, we have no family study of Mr. Luick or his background or his present situation and in that light the only evidence we have is his personality, profile and so on in the incidents in which—of conduct that he displayed towards his wife. And I admit that is far removed in time, and other evidence would be more proper, and I would at this time move for a—the family study ordered to be performed, social study on Mr. Luick and his family situation and his facilities in California which would be permissible and is possible through the Uniform Child Custody Jurisdiction Act to be performed through the California Agency out there.

THE COURT:

*Well, we do intend to have studies made.* There may be a question of costs, who will pay for it, and we'll have to determine at that time and, *of course, there will be delays in rendering the decision of this case waiting for those studies,* but we do intend to have both homes evaluated and reports made to the Court, but we sustain the objection to your present inquiry."

Notes of Hearing, 11/16/81 at 82–83. (Emphasis added.) [4]

In the final opinion which was issued by the court after the reports were submitted, the trial court said that it "must also carefully evaluate the *home environment* as

undertake to have an independent examination of both homes made by a social welfare agency." *Gerald G. v. Theresa G.,* 284 Pa.Super. 498, 504, 426 A.2d 157, 160 (1981).

**4.** Even though the attorney did not ask the court at the hearing to conduct a further hearing at the time that the reports were submitted to the court, we have said that the court has a duty to insure that the record is complete. *See* footnote, *infra* at 1. *Cf. Palmer v. Tokarek,* 279 Pa.Super. at 474 n. 3, 421 A.2d at 297 n. 3 (theory of waiver inapplicable in a child custody dispute). *See generally* Pa.R.C.P. 1915.10 (effective date July 1, 1982).

established by each parent as an indication of relative fitness for custody ... [and that i]t is the Court's determination that the *home environment* established by the respondent, [the apellee,] a loving father, will best promote the physical, intellectual and spiritual well-being of Justin." See Trial Court Opinion at 6. (Emphasis added).

■ Under these circumstances, we conclude that disinterested testimony was not presented "concerning the fitness of *each* parent's home," and since the court considered this factor in its determination, we are unable to conclude that the admission of the reports was harmless error. *Hugo v. Hugo,* 288 Pa.Super. at 10, 430 A.2d at 1187. Because of this defect in the record, the "ex parte" report should not have been admitted without taking testimony and giving an appellant "an opportunity to cross-examine the individual who made up the report and/or to present rebuttal testimony." *Palmer v. Tokarek,* 279 Pa.Super. at 475, 421 A.2d at 298 (1980). *See Rummel v. Rummel,* 263 Pa.Super. at 99, 397 A.2d at 15 (the matter was remanded where "there was a violation of appellant's rights when the lower court relied on the aforesaid [Cambria County Children's Services'] report without first submitting it to appellant so that she might call witnesses for the purpose of contradicting or explaining it.")

In a recent case, we remanded the matter to the trial court and said the following:

"It is settled that in a contested case, reports may not as such be admitted into evidence or considered by the court. The authors of the reports ' "must themselves be produced, sworn and examined as witnesses and be subject to cross-examination." ' *Wood v. Tucker,* 231 Pa.Super. 461, 463, 332 A.2d 191, 192 (1974) (quoting *Commonwealth ex rel. Oncay v. Oncay,* 153 Pa.Super. 569, 570, 34 A.2d 839 (1943)). *See also Kessler v. Gregory,* 271 Pa.Super. 121, 412 A.2d 605 (1979); *Rummel v. Rummel,* 263 Pa.Super. 97, 397 A.2d 13 (1979). Moreover, this court

'has repeatedly made plain that in a child custody case ... the record must be complete ....' *Gunter v. Gunter*, 240 Pa.Super. 382, 390, 361 A.2d 307, 311 (1976). *See also Commonwealth ex rel. Grillo v. Shuster*, 226 Pa.Super. 229, 312 A.2d 58 (1973); *Williams v. Williams*, 223 Pa.Super. 29, 296 A.2d 870 (1972)." *Dunsmore v. Dunsmore*, 309 Pa.Super. 503, 455 A.2d 723, at 724–25 (1983).

■ Additionally, a psychological report of Justin was filed with the court at the same time as the investigative reports; however, *no reference* is made to this report in the trial court's opinion. The psychologist's examination was conducted because of a referral made by appellee. This report contains information which is favorable to appellee and unfavorable to appellant.

For example, although appellee and Justin were the only ones interviewed by the psychologist, the report concludes that "it would be in the best interest of Justin that he remains in the custody of his natural father, Nick Luick. Also provisions should be granted for Justin's visitations (vacations) with his mother." "Psychological Evaluation" at 5.

The report also contains the following:

"The implication [from the psychological tests] is that Justin's *home environment* (in Pennsylvania) has probably been inhibiting his verbal intellectual functioning. The other subtests [sic] scores indicate that he has greater intellectual potential and that the better the home environment influences, the more the likelyhood [sic] of scholastic success." "Psychological Evaluation" at 3. (Emphasis added).

At this time, we express no conclusion concerning whether, indeed, Justin's best interests would be served by granting custody to the natural father, who resides in California, or with the mother, who resides in Pennsylvania. Instead, we are unable to reach the merits of the case because

appellant did not have an opportunity to question the report which was included in the record to this Court. Even though the trial court failed to state how much weight, if any, was accorded the psychologist's report, a remand is necessary because of this and other previously mentioned unexplained deficiencies. *Compare In re Hill,* 248 Pa.Super. 415, 419, 375 A.2d 165, 168 (1977) (remand where "[w]e are not able to say with certainty how much weight was afforded the improperly admitted report.") with *Sandra L.H. v. Joseph M.H.,* 298 Pa.Super. 409, 413, 444 A.2d 1241, 1244 (1982) (no remand where the judge stated that the "study did not weigh in his deliberations and that the autobiographical section [of the report] was not considered at all.")

The record is remanded for further hearing at which time the parties should be given an opportunity to cross-examine the authors of the reports and/or present rebuttal testimony.[5]

The trial court shall then determine the weight to be accorded the testimony, if any, and file "a comprehensive opinion containing its findings and conclusions." *See Lewis v. Lewis,* supra; *see also Summers v. Summers,* 273 Pa.Super. 285, 292, 417 A.2d 651, 655 (1979) (case remanded for filing of "a more comprehensive opinion setting forth its reasons, including its findings as to the credibility of the witness and the weight to be attached to the testimony.")

Either party aggrieved by the trial court's ultimate order may then take a new appeal to this Court. Jurisdiction is relinquished.

Reversed and remanded.

5. As the court indicated at the custody hearing held on November 6, 1981, costs may be an issue. For guidance on this aspect of the case, we refer the trial court to the following:

"It was not error to place the costs of evaluation on the appellant. Generally, costs inherent in a lawsuit are awarded to the prevailing party."

*Hugo v. Hugo,* 288 Pa.Super. at 10, 430 A.2d at 1187.