462 A.2d 843

Linda HALL, Appellant,

v.

Curtis MASON.

COMMONWEALTH of Pennsylvania ex rel. Curtis MASON, Jr., a Minor Child, By and Through his natural father, Curtis MASON,

v.

Linda HALL, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 6, 1983.

Filed July 8, 1983.

George A. Brutscher, Kennett Square, for appellant.
William J. Litvin, West Chester, for appellee.

Before SPAETH, BECK and JOHNSON, JJ.

JOHNSON, Judge:

The instant consolidated appeals arise from the trial court's order awarding custody of Curtis Mason, Jr. to his father, Curtis Mason.

The child's parents were married in 1973 and the child was born February 22, 1975. Following an extended period of marital difficulties, Curtis Mason left the marital household in August of 1978 and shortly thereafter took up residence with Paula Gessner and one of her children. Linda Hall took up residence with Harvey Hall, whom she married in February of 1979, following her divorce from Curtis Mason in October of 1978. On September 11, 1979, Linda Hall filed a petition seeking confirmation of custody of Curtis, Jr., who had been residing with her throughout this period along with Harvey Hall and a child of their marriage. Curtis Mason filed his petition to obtain custody on November 8, 1979.

Following five days of hearings, the trial court awarded custody of the child to Curtis Mason with visitation rights to Linda Hall. After denial of Linda Hall's exceptions, this appeal followed.

The primary concern in child custody cases is the best interests of the child, including the child's physical, intellectual, emotional, moral and spiritual well-being. *Commonwealth ex rel. Holschuh v. Holland-Moritz*, 448

Pa. 437, 292 A.2d 380 (1972); *In re Custody of J.S.S.*, 298 Pa.Super. 428, 444 A.2d 1251 (1982). In a contest between parents, each party has the burden of proving that the best interests of the child will be served by awarding custody to him or her. *In re Custody of J.S.S., supra; Beichner v. Beichner*, 294 Pa.Super. 36, 439 A.2d 737 (1982).

 It is clear that the scope of our review in custody cases is of the broadest type. *Commonwealth ex rel. Pierce v. Pierce*, 493 Pa. 292, 426 A.2d 555 (1981); *Commonwealth ex rel. Newcomer v. King*, 301 Pa.Super. 239, 447 A.2d 630 (1982). However, we cannot nullify or usurp the *fact-finding* function of the trial court, as the trial court is in a superior position to appraise the attitudes, sincerity, credibility and demeanor of the witnesses. *Commonwealth ex rel. Montgomery v. Montgomery*, 296 Pa.Super. 325, 442 A.2d 791 (1982), *citing Commonwealth ex rel. E.H.T. v. R.E.T.*, 285 Pa.Super. 444, 427 A.2d 1370 (1981). Although we must defer to the trial court's findings of fact, we are not bound by the trial court's deductions and inferences. *Commonwealth ex rel. Newcomer v. King, supra.* Instead, we must exercise independent judgment based on the evidence and make such an order on the merits of the case as to do right and justice. *Id.* In exercising our independent judgment, we are not limited to determining whether the trial court abused its discretion in formulating its custody order. *See Robert H.H. v. May L.H.*, 293 Pa.Super. 431, 439 A.2d 187 (1981).[1] Adherence to an abuse of discretion standard would defeat the purpose of our exercising independent judgment.[2] *Id.*

**1.** We recognize that this question of the scope of review in custody cases remains pending before our court in the case of *In re Williams*, No. 674 Pittsburgh, 1981, argued before this court en banc on May 10, 1983. However, the exercise of a different scope of review in this case would not affect the result.

**2.** This writer has previously stated that "[w]hen the hearing judge fully complies with these requirements [regarding the furnishing of a complete record, a comprehensive opinion and a thorough analysis], his decision is not reversed unless he has abused his discretion." *In re Custody of J.S.S.*, 298 Pa.Super. at 432, 444 A.2d at 1252–53. This statement was made with the view that where the trial judge complies

■ So as to facilitate this broad review, we consistently emphasize that the trial court must provide us with a complete record and a comprehensive opinion containing a thorough analysis of the record and specific reasons for the court's ultimate decision. *In re Custody of J.S.S., supra; Garrity v. Garrity*, 268 Pa.Super. 217, 407 A.2d 1323 (1979).

The evidence at trial was conflicting concerning the fitness of each parent. Basically, each parent's testimony denigrated the other's character and fitness. Upon a review of the entire record, we find that sufficient evidence was presented in order for a proper determination to have been made. In addition to the parties and their character witnesses, each party had the child tested and evaluated by a psychologist.

The evidence indicated that both homes enjoyed sufficient income and space to adequately care for the child. Concerning Linda and Harvey Hall, the evidence indicated that: (1) Linda Hall had made obscene telephone calls to Curtis Mason on a regular basis and that the child was present with her on at least one occasion, (2) Linda Hall often used obscene, vulgar and abusive language towards the child, (3) because of instructions from Linda and Harvey Hall, the child was fearful of returning from visits with his father in clothing other than that in which he had arrived, (4) Linda Hall engaged in an ongoing vilification of Curtis Mason, telling the child, inter alia, that his father was a drunk, smoked marijuana, was a liar and did not love the child, (5) Linda Hall told the child that his father was the cause of their separation, (6) Linda Hall referred to Paula Gessner as, inter alia, a whore, in front of the child, (7) Linda Hall

with these requirements, he is unlikely to have abused his discretion. *See Boland v. Lesko,* 308 Pa.Super. 169, 175 n. 2, 454 A.2d 75, 77–8 n. 2 (1982).

However, upon further reflection, I now conclude that our duty in custody cases obliges us to go beyond the abuse of discretion standard in reviewing such cases. *See e.g. Commonwealth ex rel. Newcomer v. King, supra; L.D. v. B.D.,* 291 Pa.Super. 589, 436 A.2d 657 (1981); *Commonwealth ex rel. E.H.T. v. R.E.T.,* 285 Pa.Super. 444, 427 A.2d 1370 (1981) (Concurring opinion by HOFFMAN, J.).

told the child that Harvey Hall was his father, not Curtis Mason, (8) Linda Hall lacked emotional stability, as indicated by her suicide attempts, as well as her vilification of Curtis Mason, (9) the Hall's lacked diligence in caring for the child by rising late in the day and relegating the child to watching television until they arose, (10) Linda Hall lacked diligence in preparing the child for pre-school, resulting in his often missing the bus, (11) Harvey Hall engaged in inappropriate games with the child, including spitting and passing gas, and (12) Linda and Harvey Hall engaged in inappropriate discipline of the child, including violent handling of the child.

The evidence also indicated that Curtis Mason was a dedicated and loving parent and that Paula Gessner was an extremely caring and competent member of Curtis Mason's household. In all, the trial court resolved the issues of credibility against Linda Hall in regard to her denials of the negative evidence of her character and in regard to her negative evidence concerning Curtis Mason. Upon a complete review of the record, we agree that this resolution was proper.

The child was also evaluated by a psychologist representing each of the parties. They concurred that the child was of average intelligence, well-adjusted, outgoing and adaptable. As to preference, the child answered differently to each psychologist concerning where he would like to live.

Linda Hall's psychologist recommended that unless there was a serious danger requiring removal of the child from his mother's custody, such a change would not be in his best interests. He also stated his belief that transfers of child custody should be avoided whenever possible. Furthermore, he recommended that the natural father's role should be secondary if custody were to remain with Linda and Harvey Hall.

The psychologist testifying for Curtis Mason recommended that should Curtis and Paula Gessner be better able to provide for the child than Linda and Harvey Hall, then custody should be awarded to Curtis and Paula. He also

stated that a change in custody would not be detrimental to the child in the instant case.

■ We disagree with Linda Hall that the trial court based its award on past conduct. Clearly, a parent's ability to care for a child must be determined as of the time of the custody hearing, not as of an earlier time. *In re Custody of Frank*, 283 Pa.Super. 229, 423 A.2d 1229 (1980). However, the trial court made every effort to avoid basing its decision on past conduct. For example, Linda Hall's poor past performance as a housekeeper was not given weight.

Concerning the expert testimony, we find it to be inconclusive concerning custody, as each psychologist based his determination on the assumption that the parents were, in fact, of proper character and fitness. We further note that Linda Hall's psychologist did not interview Harvey Hall and therefore was unable to give a valid opinion as to the child's environment when Harvey Hall is included.

■ Linda Hall further argues that the child should not be uprooted in the absence of substantial and compelling reasons. *McCourt v. Meyers*, 268 Pa.Super. 152, 407 A.2d 875 (1979). Although the continued residence of a child with one parent may be a controlling factor in a child custody proceeding, *Hugo v. Hugo*, 288 Pa.Super. 1, 430 A.2d 1183 (1981), we believe that the evidence when read as a whole supports the trial court's conclusion that the best interests of the child will be served by awarding custody to Curtis Mason, the natural father.

We find Linda Hall's arguments concerning the child's preference meritless in view of the child's modulations concerning his preference and his age at the time of trial. *See Parks v. Parks*, 284 Pa.Super. 400, 426 A.2d 108 (1981). Also, we find no support for her allegation that she should retain custody simply because of the policy that siblings should be raised together. *See Albright v. Commonwealth ex rel. Fetters*, 491 Pa. 320, 421 A.2d 157 (1980).

■ Finally, Linda Hall alleges that the factor of Curtis Mason's meretricious relationship with Paula Gessner

should tip the weight of the evidence in favor of custody to her. The only relevance a nonmarital relationship has in a custody dispute is its effect of that relationship on the child; if evidence shows that the parent's conduct does not adversely affect the child, then the best interests of the child may dictate that custody be given to that parent. *In re Donna W.*, 284 Pa.Super. 338, 425 A.2d 1132 (1981). The trial court determined that this relationship was not harmful to the child, and our review reveals the same result. Therefore, the issue is without merit.

The order is affirmed.

SPAETH, J., concurs in the result.